IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AGUSTIN PACHECO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-1922-N |
| | § | |
| UNIVERSAL FOREST PRODUCTS | § | |
| WESTERN DIVISION, INC., | § | |
| | § | |
| Defendant. | § | |

# ORDER

This Order addresses Defendant Universal Forest Products, Western Division, Inc.'s ("Universal") motion for summary judgment [10]. Because Plaintiff Augustin Pacheco failed to exhaust his administrative remedies with respect to his hostile work environment claim, the Court grants summary judgment in favor of Universal on his hostile work environment claim. Further, because Pacheco fails to show that he suffered an adverse employment action, the Court grants summary judgment in favor of Universal on his national origin discrimination claim. Finally, because Pacheco presents no evidence that he engaged in an activity protected under Title VII, the Court grants summary judgment in favor of Universal on his retaliation claim.

## I. ORIGINS OF PACHECO'S LAWSUIT

This is an employment discrimination case. Plaintiff Pacheco has worked for Defendant Universal since 1986. His troubles at Universal began around 2007, after the company acquired a plant from Banks Lumber and transferred some of its operations to the

new plant. Before the plant merger, Pacheco worked as a "Floor Supervisor" in a Universal plant in Grandview, Texas. After the merger, Pacheco was eventually assigned the role of "hourly Production Supervisor" at the Grandview plant.[1]

Pacheco alleges that, after the merger, race relations were tense at the Hillsboro plant. He says the former Banks workers looked at the Universal workers "as enemies" and believed that they "were there to take [their] jobs," although he provides no evidence that these comments were race-related. Def.'s App. at 43 [12-3]. A coworker told him that a supervisor disliked Hispanics. *Id.* at 73–74. Finally, he heard of other workers using racial slurs like "wetbacks" and "illegals," although he also testified that the terms were used "in a joking way, playing around, but not something where they are saying something negative against or bad about Hispanics." *Id.* at 73.

In addition to these racial tensions, Pacheco had conflicts with Universal management. One incident involved another worker. The worker, Herman Mouser, asked Pacheco to sign a statement saying that Pacheco personally saw Mouser sustain an injury on the job. Pacheco obliged, signing a statement that "Herman Mouser hurt his leg on February 14, 2008 when he was at work." Def.'s App. at 61. However, Pacheco later admitted that he "did not personally see him" get hurt on the job. *Id.* Universal, on learning of Pacheco's false statement, asked him to sign another statement clarifying that he never witnessed an injury and that he lied for Mouser in exchange for Mouser's plumbing services at Pacheco's home.

---

[1]The parties disagree as to Pacheco's exact job title after the merger. Ultimately, though, the Court finds that his precise job title is not material to any of his claims, all three of which fail for reasons unrelated to his job title.

Pacheco refused to sign the statement, despite being told that he could correct any inaccuracies before signing. In addition to the Mouser incident, Universal says Pacheco's performance suffered after the merger. His 2007 and 2008 performance review highlighted numerous areas for improvement.

In light of the performance reviews, the Mouser incident, and the flagging economy, Universal transferred Pacheco to a new position in June 2008, that of "hourly Quality Control." Considering the transfer to be a demotion, Pacheco decided to sue. He filed a discrimination charge with the Equal Opportunity Employment Commission ("EEOC"). His charge alleged national origin discrimination and retaliation. Specifically, the charge said:

> A. I was given the position of Manager of Personnel July 20, 2007, and two (2) months later the position of Manager of Production without an increase in salary.
> B. I was denied the opportunity to attend training other supervisors attended in April and May 2008.
> C. I was transferred June 9, 2008, to another department.
> D. Eric Trinn, White, was promoted to Production Manager on or about June 9, 2008.

Def.'s App. at 7A [12-2]. The EEOC granted Pacheco's notice of right to sue the same day, and Pacheco filed this lawsuit. He alleges several violations of Title VII of the Civil Rights Act of 1964: (1) hostile work environment based on national origin; (2) national origin discrimination; and (3) retaliation.

## II. S<small>UMMARY</small> J<small>UDGMENT</small> S<small>TANDARD</small>

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F<small>ED</small>. R. C<small>IV</small>. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324. In doing so, the nonmovant may not rely on "naked assertions of an actual dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props., Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255–56). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

### III. HOSTILE WORK ENVIRONMENT

Pacheco's hostile work environment claim fails because he did not exhaust his administrative remedies. "Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). Specifically, a plaintiff must timely file a charge with the EEOC before bringing suit and receive statutory notice of the right to sue. 42 U.S.C. § 2000e-5(e)(1), (f)(1). A plaintiff's EEOC charge must articulate each basis for her Title VII claim. *See, e.g.*, *Merritt v. United Parcel Serv., Inc.*, 321 F. App'x 410, 413 (5th Cir. 2009) (rejecting a hostile work environment claim where the plaintiff charged only race and age based discrimination, but not a hostile work environment).

A plaintiff may bring a hostile work environment suit when it "'could reasonably be expected to grow out of the initial charges of discrimination.'" *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000) (quoting *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995)). For instance, in *Gates v. Lyondell Petrochemical Co.*, the Fifth Circuit held that the plaintiff's "hostile environment and unequal pay claims could not be expected to grow out of her EEOC discrimination charge when she charged only her employer's discrete acts in terminating and failing to promote her, and made no mention of a hostile work environment or unequal pay." 227 F. App'x 409, 409–10 (5th Cir. 2007) (per curiam). Similarly, in *Stith v. Perot Systems Corp.*, the Fifth Circuit found a failure to exhaust because "[n]owhere in the narrative" of the EEOC charge was "anything other than the alleged

discrete acts of discrimination (i.e., the relocation of her position to Dallas) even mentioned." 122 F. App'x 115, 118 (5th Cir. 2005).[2]

Pacheco's hostile work environment claim could not reasonably be expected to grow out of his EEOC discrimination charge. Like the plaintiffs in *Stith* and *Gates*, Pacheco's EEOC charge refers only to "discrete acts" of discrimination. In particular, Pacheco's charge alleges four discrete acts: (A) a promotion without a raise; (B) denial of an opportunity to attend training; (C) transfer to another department; and (D) a white person being promoted into his former position. Def.'s App. at 7A. But these discrete acts are not the basis for his hostile work environment claim. Rather, he bases that claim on coworkers' use of racial slurs, a supervisor's reputed dislike of Hispanics, and the Banks plant workers' "us-versus-them" mentality toward the Universal workers. Pl.'s Resp. at 11 [17]. These factual allegations appear nowhere in his EEOC charge, and nothing else in his charge could reasonably give rise to a hostile work environment claim. Accordingly, Pacheco's hostile work environment claim fails for failure to exhaust his administrative remedies.

---

[2]*See also Magana v. Tarrant/Dallas Printing*, 1999 WL 706122, at *1 (5th Cir. 1999) (per curiam) ("We agree with the district court, however, that the claim of hostile work environment contained in Magana's judicial complaint involves new and independent allegations of discrimination that neither grew out of nor are directly related to the subject matter of his EEOC charge-i.e., demotion."); *Spears v. DSM Copolymer, Inc.*, 1996 WL 731356, at *1 (5th Cir. 1996) (per curiam) ("The district court also compared Spears' EEOC charge (failure to promote based on race) to his federal complaint [which included hostile work environment] and found that the claim[] in his complaint could not reasonably be expected to grow out of his initial EEOC charge. We agree.").

### IV. NATIONAL ORIGIN DISCRIMINATION

In order to establish a prima facie case of discrimination under Title VII, a plaintiff must show that: "(1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class or was treated less favorably than other similarly situated employees outside the protected group." *Cooper v. United Parcel Serv., Inc.*, 2010 WL 610047, at *3 (5th Cir. 2010) (per curiam) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)).

Pacheco's Title VII discrimination claim fails because he provides no evidence of an adverse employment action. His discrimination claim rests on a constructive discharge theory. "Under federal law, the constructive discharge doctrine is an alternative way of proving an adverse employment action in Title VII and other cases . . . ." *Wells v. City of Alexandria*, 2004 WL 909735, at *3 (5th Cir. 2004) (per curiam). The general rule in these cases is that "if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into involuntary resignation, then the employer has committed a constructive discharge and is as liable as if it had formally discharged the aggrieved employee." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242–43 (5th Cir. 1993) (citing *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990)). To prove a constructive discharge, Pacheco must demonstrate that a "'reasonable person in his shoes would have felt compelled to resign.'" *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 301 (5th Cir. 2001) (quoting *Faruki v. Parsons, S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997)).

Pacheco's constructive discharge theory fails because he never quit his job, so this Court cannot deem his resignation tantamount to a formal discharge. Neither party cites Fifth Circuit authority addressing this precise situation: where a still-employed worker sues his employer for constructive discharge. However, the Fifth Circuit has held that, in order to succeed on a constructive discharge claim, an employee must resign within a reasonable time of the complained-of conduct. See *Donaldson v. Burlington Indus., Inc.*, 2004 WL 1933603, at \*2 (5th Cir. 2004) (per curiam).[3] In *Donaldson*, one of the employee's proferred reasons for quitting involved "a heated meeting between her and two Burlington managers several months before she resigned." *Id.* But the Fifth Circuit rejected her constructive discharge theory because she "did not resign until well after the meeting." *Id.* Thus, "it would be unreasonable to find that the meeting, standing alone, caused [her] to feel compelled to resign." *Id.*

Implicit in this requirement of temporal proximity between the employee's resignation and the employer's conduct is this: a constructive discharge plaintiff must have actually quit

---

[3]Other circuit courts agree: in order to succeed on a constructive discharge claim, an employee must resign within a reasonable time of the complained-of conduct. *See, e.g.*, *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 167 (1st Cir. 1991) ("[I]f Smith did not leave Bath Iron Works within a reasonable time after last being the subject of discrimination, she cannot prevail under a constructive discharge theory."); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989) (district court did not err in rejecting constructive discharge claim where harassing conduct stopped a month prior to employees' resignation). *But see Hunt v. City of Markham*, 219 F.3d 649, 655 (7th Cir. 2000) (allowing for constructive discharge claim where "extraordinary circumstances" could cause a person "to cling to his job despite provocations that would cause the average person to quit in disgust," either "out of desperation or simple stubbornness").

her job. Other district courts in this circuit agree and have thus rejected constructive discharge claims from employees who never resigned. *See, e.g.*, *Green v. Sutherlin*, 2000 WL 222853, at *2 (E.D. La. 2000) ("Green did not resign; therefore, he fails to fulfill the requirements of a constructive discharge claim."); *see also Bernard v. Rooms To Go*, 2004 WL 1171211, at *5 (N.D. Tex. 2004) ("doubting" that the plaintiff's EEOC charge alleged facts sufficient to show constructive discharge because the he was still employed when he filed the charge). *But see, e.g.*, *Shafer v. Dallas County Hosp. Dist.*, 1997 WL 667933, 6 (N.D. Tex. 1997) (employee could bring constructive discharge claim based on taking medical leave).

Accordingly, because Pacheco never resigned from his position, his national origin discrimination claim fails as a matter of law because he fails to show an adverse employment action.[4]

---

[4] Pacheco's response brief advances only his constructive discharge theory. However, he complains of several discrete acts as the basis for his constructive discharge: Universal's alleged refusal to train him, his alleged unequal pay, and his transfer to hourly "Quality Control" worker. To the extent he intends for any of these discrete actions as the basis for his Title VII–discrimination claim, the claim still fails.

First, "a refusal to train is not an adverse employment action under Title VII." *Hollimon v. Potter*, 2010 WL 338020, at *2 (5th Cir. 2010) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir.1999)). Further, with respect to unequal pay, Pacheco himself admits that he is the highest paid hourly worker in his plant. Pl.'s Resp. to Mot. Summ. J. at 15. Moreover, he points the Court to no record evidence indicating that he is paid less than similarly situated non-Hispanic employees. Finally, he provides no evidence other than his own conclusory assertion that his transfer to quality control was an adverse employment action. Even if he had, he provides no evidence to rebut Universal's legitimate proferred reasons for his transfer: the slow economy, his false statements, and his flagging performance. Accordingly, Pacheco fails to carry his burden on Title VII discrimination, whether under a traditional or constructive discharge theory.

## V. RETALIATION

In order to establish a prima facie case of Title VII retaliation, a plaintiff must show: "(1) that she engaged in activity protected by Title VII . . . ; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 724 (5th Cir. 1986); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990)).

Pacheco provides no evidence that he engaged in an activity protected by Title VII. Title VII–protected activities, for purposes of a retaliation claim, include "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3. Pacheco's retaliation theory is that he engaged in the protected activity of opposing an unlawful employment practice. Specifically, he says he opposed the practice of "making a Hispanic supervisor sign a letter that a Caucasian supervisor would not have been forced to sign." Pl.'s Resp. at 18. Pacheco has not shown that this alleged practice would be illegal under Title VII, or, more to the point, that he reasonably believed it was.[5] Further, Pacheco presents no evidence that this alleged practice *even existed at all*. He baldly states in his response that he "believes that had a Caucasion supervisor provided the allegedly false statement for Mr. Mouser, he would not have been forced to sign" the statement Universal asked him to sign. However, he points to no record evidence supporting this belief.

---

[5]"[A] plaintiff claiming opposition need not prove that the practice she opposed was indeed unlawful, just that plaintiff had a reasonable belief that it was unlawful." *Smith v. Tex. Dep't of Water Resources*, 818 F.2d 363, 370 (5th Cir. 1987).

ORDER – PAGE 10

Accordingly, Pacheco has not shown that he opposed an unlawful practice, so his retaliation claim must fail.

## CONCLUSION

Because Pacheco failed to exhaust his administrative remedies with respect to his hostile work environment claim, the Court grants summary judgment in favor of Universal on that claim. Further, because Pacheco fails to show that he suffered an adverse employment action, the Court grants summary judgment in favor of Universal on his national origin discrimination claim. Finally, because Pacheco presents no evidence that he engaged in a Title VII–protected activity, the Court grants summary judgment in favor of Universal on his retaliation claim.

Signed August 31, 2010.

_____
David C. Godbey
United States District Judge